IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | 2:13-cv-00653-MSD-LRL |
| ) | |
| v. ) | |
| ) | |
| WATERSIDE CAPITAL CORPORATION ) | |
| ) | |
| Defendant. ) | |
| ) | |

FIRST RECEIVER'S REPORT
FOR THE PERIOD MAY 28, 2014 THROUGH MAY 31, 2015

This First Receiver's Report ("Receiver's Report") is being filed with this Court by the U.S. Small Business Administration ("SBA"), which was appointed Receiver (the "Receiver") for Waterside Capital Corporation ("Waterside") pursuant to the Order of this Court dated May 28, 2014.

This Receiver's Report details the activities of the receivership for the period from May 28, 2014 through May 31, 2015, as well as summarizes the background of the receivership and its cash position as of May 31, 2015 The accounting schedule accompanying this report covers the period from the start of the receivership through May 31, 2015. Where significant events and activities have occurred subsequent to preparation of the accounting schedule but before the submission of this report to the Court, they are also reported herein.

## I. BACKGROUND

Waterside is a Virginia Corporation that was licensed in 1996 as a Small Business Investment Company (hereinafter "SBIC") by SBA to provide loans and equity capital to small business concerns ("SBCs"). SBICs are subject to SBA regulation pursuant to the Small Business

1

Exhibit 1

Investment Act of 1958, as amended, 15 U.S.C., sec. 661 et seq. ("Act"), and the implementing Regulations, 13 C.F.R. part 107 ("Regulations").

Pursuant to the Act, SBA provided funds to Waterside through the purchase and/or guaranty of Debentures, as those terms are defined under the Regulations. Subsequently, the outstanding total of the Debentures reached $16,100,000.00. As of May 28, 2015, the date the Consent Judgment was entered, the principal balance outstanding was $11,700,000.00. Currently, there remains $11,700,000.00 in principal outstanding, plus unpaid interest on that amount pursuant to the terms of the Consent Judgment.

On behalf of the SBA, the United States of America filed a complaint with this Court on November 20, 2013 asserting that Waterside had violated the Act and the Regulations, specifically with respect to Waterside's condition of capital impairment. On May 28, 2014 this Court entered its Consent Order and Judgment Dismissing Counterclaim Appointing Receiver, Granting Permanent Injunctive Relief and Granting Money Judgment ("Receivership Order") appointing SBA permanent receiver for Waterside.

The Receivership Order provides, inter alia, that this Court take exclusive jurisdiction of Waterside and all of its assets, wherever located, and that SBA is appointed permanent Receiver of Waterside for the purpose of taking control of Waterside's operations and administering and liquidating its assets. In addition, the Receivership Order stayed all legal proceedings involving Waterside or any assets of Waterside, with the exception of two matters pending in Circuit Courts in Norfolk and Virginia Beach, Virginia, and enjoined all persons from initiating any civil proceedings involving Waterside or any assets of Waterside.

## II. OPERATIONS OF THE RECEIVERSHIP

A. **General Operations**

The overall function of the Receiver is to identify, marshal and liquidate the assets of Waterside. In furtherance of this objective, the Receiver first obtained information with respect to

the business of Waterside and other information relevant to the operations and administration of the receivership by meeting and conferring with the former officers, directors, attorneys, independent accountants and other persons. In addition, the Receiver's agents have analyzed the records maintained by the SBA, and the records maintained by Waterside. Subsequently, the Receiver prepared a schedule and analysis of Waterside's assets, and further analyzed the debts, claims and legal proceedings involving Waterside, whether as claimant or debtor, plaintiff or defendant. The Receiver has commenced collection of funds due to Waterside and is administering the Waterside receivership estate so as to effectuate an orderly liquidation of Waterside's assets subject to the approval of this Court. Specific actions taken by the Receiver are discussed in greater detail below.

Once the liquidation is completed, the net proceeds of the liquidation will be used to satisfy the claims of creditors and other parties in interest in the order of priority of such claims, as determined by this Court. Actions taken in the claims process approved by this Court for the Waterside receivership are discussed at page 10 of this report.

### B. Notice of Receivership

In accordance with paragraph 4 of the Receivership Order, the Receiver has given written notice of its appointment to relevant individuals and entities, to the extent the Receiver has been able to obtain correct mailing addresses. In addition, the Receiver sent notices of its appointment to all United States District Courts in accordance with 28 U.S.C. §754, and has served notice of the stay of litigation, ordered at paragraph 7 of the Receivership Order, on those courts in which actions involving Waterside or its assets are pending.

In January, 1998, Waterside completed its initial public offering, and was regulated by the Securities and Exchange Commission ("SEC"). On June 2, 2014 the Receiver filed a Form 8-K and accompanying press release with the SEC disclosing the May 28 entry of the Receivership Order. The Receiver has not filed any financial reports with the SEC subsequent to the filing of

Exhibit 1

Form 8-K informing the SEC of the Receivership Order and its terms and Judgment. The Receiver does not intend to file any future reports with the SEC as a consequence of this receivership.

## C. Receivership Personnel

Pursuant to paragraph 5 of the Receivership Order, the Receiver has retained attorneys, accountants and other professionals to assist SBA employees in effectuating the operation of the receivership, including examining the former operations and financings of Waterside; liquidation of Waterside's assets; pursuing claims of Waterside which may result in monetary recovery, maintaining the books and records of Waterside and the receivership; and preparing state and federal tax returns as well as corporate filings. Specifically, the Receiver retained Charles P. Fulford as principal agent. The Receiver also retained The Riggs Group P.C. to maintain the cash management and banking facilities for the Receiver. The Receiver has also engaged the accounting firm of PKF O'Connor Davies LLP, to provide accounting and tax return preparation services.

## D. Accounting and Tax Matters

The Receiver notified all relevant taxing authorities that Waterside had been placed into federal receivership and that this Court has initial jurisdiction of all matters involving the Waterside receivership estate. As of the inception of the receivership, the most recent tax returns filed by Waterside were for the fiscal year ending June 30, 2014. During the period of this report the Receiver has prepared and filed federal and state tax returns for the fiscal year ending June 30, 2015.

## E. Corporate Compliance

Waterside is a Virginia Corporation, with its principal place of business in Virginia Beach, Virginia. The Receiver has notified the State Corporation Commission for Virginia that Waterside has been placed into receivership. The Receiver has also changed Waterside's

Registered Agent in Virginia and other jurisdictions where Waterside had, or has, business relationships, and has served notice accordingly. The Receiver is preparing and filing reports with appropriate authorities for the Commonwealth of Virginia.

## F. Receivership Accounts

At the start of the receivership, Branch Banking & Trust Co. turned over $617,658.72 to the Receiver, representing funds in Waterside's accounts. All funds were deposited in a trust account pursuant to a managing agency agreement with BB&T Bank, Wilson, N.C. The trust provides daily liquidity and is collateralized by direct obligations of the United States Government.

## G. Miscellaneous Operational Matters

The receivership is operated from, and maintains all records at, its Receivership Office, located at 1100 G Street, N.W., Suite 200, Washington, D.C. 20005. The Waterside receivership shares office space, overhead expenses and administrative services with approximately 30 other receiverships. The rent, overhead expenses and administrative expenses pertaining to the operation of the office are originally disbursed by Recovery Support Services, Inc., the company which holds the lease for the office space. The expenses are then allocated each month, after accounts are reconciled, to the receiverships, including Waterside.

## III. ASSET ACCOUNTS

The former officers of Waterside provided the Receiver with information regarding the identity, location, and operating and payment status of the assets of Waterside, as required by paragraph 3 of the Receivership Order. In addition, the Receiver has consulted Waterside's most recent financial statement which is set forth on SBA Form 468 (the "Form 468") and which was prepared by Waterside's outside accountants for the year ended June 30, 2013 and for subsequent interim periods thereafter. SBA Form 468 includes financial statements of Waterside and information with respect to Waterside' investments.

Upon entry of the Receivership Order on May 28, 2014 the Receiver took possession of the files and records maintained by prior management of Waterside and established records and accounts for the period from the inception of the receivership to the present. Receivership personnel immediately commenced the task of analyzing the Waterside portfolio and determining the status of each individual asset. Follow-up work with respect to numerous transactions is continuing. Thus, to the best of the Receiver's knowledge, the assets of Waterside at the beginning of the receivership encompassed debt and equity investments in eight (8) small businesses. During the period of this report, the Receiver has collected from, settled or otherwise resolved two (2) of these investments, and is in the process of completing contracts and agreements for the resolution of two (2) additional investments. In the pending resolution of one of these investments the Receiver will also receive two promissory notes in the combined principal amount of $150,000 which are in addition to the assets which existed in the Waterside portfolio at the inception of the receivership.

Fixed assets used in the business of Waterside were fully depreciated and/or disposed of before the start of the receivership. A small quantity of computer and peripheral equipment held by Waterside was sold by the Receiver at a price of $327.00.

During the period of this report, the Receiver has responded to inquiries from parties interested in acquiring individual assets in the Waterside investment portfolio, and has conferred with other investors in the same assets. No offers have been received for the entire portfolio of assets. Offers for specific assets have been evaluated; some were rejected, others are currently in negotiation or were accepted as described in this report.

A. **Cash**

As discussed above, the Receiver recovered funds in the amount of $617,658.72 at the start of the receivership. All cash was deposited into an account at BB&T Bank in the name of

6

Exhibit 1

SBA as Receiver for Waterside Capital Corporation. At May 31, 2015 the Receiver held funds in the amount of $230,139.79 in this account.

## B. Debt and Equity Investments

The date, form and original investment amount, status and actions taken on each of the investments are described on the following pages.

### 1. Americomm, LLC.

Americomm provides direct marketing mail services, newspaper flyers. The company was formed through a management buyout of the direct marketing division of a larger company. All of Waterside's initial investment was fully repaid, leaving a 4% equity interest which was valued in the accounting records of Waterside at $28.00. Before the start of the receivership, Americomm offered to buy Waterside's equity interest at $1,000 per share, a total of $4,000.

The Receiver confirmed that the offer was still valid and evaluated the proposal based on updated financial information from the company. In December, 2014 the Receiver agreed to assign Waterside's membership interest back to the company in return for the company's payment in the amount of $4,000. The transaction was completed, and no further recovery is expected from the investment in Americomm.

### 2. New Dominion Pictures, Inc. ("NDP")

NDP is an independent television production company that creates, develops, produces and distributes television programs domestically and internationally. Before the start of the receivership a Richmond, Virginia based investment group agreed to provide interim financing of up to $675,000 to pay the production costs until progress payments are received from a major client, a subsidiary of Discovery Channel, pursuant to the contract. The Receiver granted an amendment to the Waterside lien giving them a first lien position on the Discovery Channel contract proceeds. In July, 2015, subsequent to the period of this report, the interim financing

7

Exhibit 1

was repaid and Waterside's former security position is being restored.

The principal balance on NDPs debt to Waterside is $1,111,040. The debt is secured by a second lien on the real estate owned by NDP. The real estate consists of two parcels and has a combined appraised value of approximately $1,600,000. The property is currently listed for sale. The two parcels consist of a building and six (6) acres now occupied and used by NDP; and 32 acres of adjacent raw land. There is a first mortgage on the property in the amount of $1,474,000. During the listing period several offers have been made for the building, none of which have been acceptable to NDP. No offers have been received for the land.

Waterside also has a first lien on all other assets, the largest of which is a film library of previous productions available for sale or licensing to various networks. Principal payments on the debt are in default; however NDP is continuing to make interest payments to Waterside in the amount of approximately $10,800 per month. Discussions are continuing with NDP regarding various repayment alternatives, and with other investors for an offer for all of Waterside's security, including both the business and real estate collateral.

### 3. Servient, Inc.

Servient competes in the predictive coding software segment of the e-discovery market serving law firms and large corporations. Competitors include similar small companies and larger companies recently entering the industry. Over an 8-year period Waterside invested a total of approximately $7.5 million in Servient in the form of various debt and equity instruments. During the receivership the Receiver provided an additional $185,000 to Servient in the form of a secured promissory note. The investment was requested before the start of the receivership to meet critical near-term working capital needs while Servient continued to build its business and seek additional permanent funding. The Receiver subsequently entered into discussions with Servient for additional financing, in the amount of approximately $500,000, to be matched by a new investor as part of a comprehensive financial restructuring. During these negotiations the

8

Exhibit 1

Receiver advanced an additional $65,000 to help Servient meet payroll and other critical working capital needs. Efforts continued to complete a restructuring which protected Waterside's seniority position and also allowed for additional long term funding from other sources. However, it became apparent that these objectives were incompatible.

In February, 2015 the principal of Servient and a third-party investor agreed to a buy-out alternative presented to them by the Receiver. Specific terms were subsequently negotiated: A buy-out of all Waterside interests in Servient. $650,000 cash payment upon closing and two notes, $75,000 principal each, due in 1 and 2 years, respectively. The notes will be obligations of Servient, personally guaranteed by the principal and new investor. 12% interest is due on both notes at maturity and until principal is paid in full if not paid at or before maturity. Additionally, in the event a controlling interest in Servient is sold within one (1) year of the execution of the buy-out agreement, the Waterside Receiver is entitled to 20% of the net proceeds of such sale. On July 8, 2015, the Receiver filed a Motion for an Order Approving Buyout Agreement of Servient, Inc. The motion was granted by Order entered by the Court on August 25, 2015. On September 10, 2015 the Receiver received the $650,000 cash payment and, subsequently, the executed promissory notes and all other documents pursuant to the buyout agreement. The cash payment was received after the period of this report and is not reflected in the attached schedule of receipts and disbursements.

4. **Digital Square, LLC**

Digital Square provides software and internet access to smaller, PC based companies. Before the start of the Receivership, Waterside recommended sale to other principals/investors in Digital Square as the only likely exit to produce any value. The company is experiencing limited growth and revenue, and EBITDA losses are substantial. New investors over the past ten years have forced the Waterside investment to a minor and junior position.

Waterside's original investment was in the amount of $729,121. The company received

the notice of receivership, the receivership order, and the notice of a claims bar date. They have been contacted by the Receiver and have provided updated financial statements and access to other investor communications. The Receiver is evaluating the company's financial situation and exploring various exit alternatives.

5. **Rileen Innovative Technologies, Inc. ("Rileen")**

Rileen provides devices to identify and verify individuals through a combination of fingerprint, facial and iris scan technologies. All of the original debt investment by Waterside in Rileen was recovered before the start of the receivership. Waterside now holds 120 shares of Rileen common stock, approximately 8 % of total Rileen common and preferred equity. As a result of the company's performance and weak cash position, no further buy-backs of stock are currently projected. If at some point in the future buy-back offers should resume, they would be limited to the preferred shares ahead of Waterside's common stock.

During the period of this report the President and majority owner of Rileen offered $15,000 for the Waterside common shares, and the Receiver has evaluated and accepted the offer. As of the date of submission of this report the Receiver is working with counsel to complete the transaction.

6. **Triangle Biomedical Sciences ("TBS")**

TBS provides sophisticated equipment and supplies to histology markets (the science concerned with minute structure of tissues and organs). Waterside initially invested in TBS in 1998. Over the subsequent years, total debt due Waterside reached $2.9 million (principal). More recently, the company focused on offering turnkey laboratory installations to individual medical practices, with success.

In May 2013 TBS was acquired by General Data, a diversified medical services firm. Waterside received $2,432,100 at closing, plus additional subsequent payments reducing the remaining principal balance to $200,075. An escrow fund in the amount of $300,000 was

established for a one year period, subject to TBS management incentives for company performance after the closing. Management incentives earned exceeded $300,000, and the escrow expired by its terms in May, 2014, shortly before the start of the Waterside receivership, with no further funds available to Waterside. The sale transaction, escrow documents and relevant bank account records were review by the Receiver in cooperation with counsel retained by Waterside before the start of the receivership. After reviewing supporting documentation the Receiver concluded that the transaction was completed pursuant to its terms with no further funds remaining to be distributed to Waterside. No further recovery is expected.

## IV. LIABILITIES OF WATERSIDE

A. **Claims Bar Date Procedure**

In order to determine the existence, validity and priority of all claims against Waterside, the Receiver, on January 6, 2015, filed a petition requesting this Court to issue an order 1) approving procedures for notifying all persons or entities who may have claims against the receivership estate that they must file such claims with the Receiver, and 2) setting an absolute deadline for receipt of all such claims.

In February, 2015, pursuant to the January 29, 2015 order of this Court (the "Claims Order"), the Receiver solicited claims against Waterside and this Receivership for submission by the Claims Bar Date of solicited claims against Waterside, the receivership estate, and assets or funds in the possession of the Receiver. The Receiver's solicitations were made by direct mailings of the Notice of the Claims Bar Date ("Notice") to known prospective claimants, and by publication of the Notice once each week for two (2) weeks in *The Norfolk Virginian-Pilot* on February 20 and February 27, 2015. Mailings were sent via U.S. mail, postage prepaid, to all persons or entities, other than the SBA, which the Receiver had reason to believe were creditors, agents, former directors or officers, employees, partners, participant investors or lenders with

Waterside, portfolio concerns of Waterside, all shareholders of Waterside ("Shareholders") and to any other persons or entities who had, during the term of the receivership, asserted a claim against Waterside, the receivership estate, or assets or funds in the possession of the Receiver.

The Bar Date Order required all claims to be submitted to Charles P. Fulford, Principal Agent for the Receiver, within thirty (30) days of the last date of publication of the Notice (the "Notice"). The Claims Bar Date was March 30, 2015 ("the Bar Date"). The Receiver subsequently learned that mailings to fourteen (14) of the Shareholders could not be confirmed to the Receiver's satisfaction. Thus, for those 14 individuals and entities, the Receiver mailed a second Notice and extended the claims bar date to May 11, 2015 to account for the apparent error in mailing.

In response to the Receiver's solicitation for claims, the Receiver received ten (10) claims on or before the Bar Date, including one claim from one of the 14 Shareholders to whom notice was given in the subsequent mailing. An eleventh claim was received on April 6, 2015; however at the time of the Claims Bar Date the Receiver was in discussions with the claimant regarding other services provided to the estate post receivership, and was aware of the impending claim. The Receiver does not dispute the amount claimed for pre-receivership services to Waterside, and will recommend payment of the claim in the normal course of liquidation of general unsecured claims.

Of the total claims received, seven (7) were from shareholders based solely upon their equity positions in Waterside. In accordance with paragraph 8 of the Bar Date Order, any person who failed to file a claim against Waterside, the Receivership estate, or assets or funds in the hands of the Receiver in accordance with the provisions of the Bar Date Order, is forever barred and enjoined from asserting, pursuing, or prosecuting such claims against Waterside, the Receiver or assets or funds in the possession of the Receiver.

The Receiver filed a Motion for Entry of an Order Approving the Receiver's

Exhibit 1

Recommendation of Disposition of Claims, Authorizing Payment of Approved Claims and Establishing Summary Disposition Proceedings. Such motion was granted and the Court entered its Order Approving the Receiver's Recommendation of Disposition of Claims, Authorizing Payment of Approved Claims and Establishing Summary Disposition Proceedings on September 4, 2015. The Order approved the Receiver's proposed allowance and payment of claims and established a summary disposition procedure which afforded any claimant an opportunity to object to the recommended disposition of its claim within 30 days of service of the Order. The Order was served upon the claimants at the addresses and on the dates listed on the Certificate of Service filed with the Court on September 16, 2015.

## V. LITIGATION

Pursuant to paragraph 7 of the Receivership Order, all litigation or prospective litigation involving Waterside has been stayed with the exception of two cases discussed below (*Waterside v. Businessventures.com*, and *Waterside v. Paul Dietrich*), A third case, *Waterside v. International Wood/Sonak Management*, was reduced to a Judgment before the start of the receivership. The Receiver is not aware of any other litigation involving Waterside during the period of this report.

1. **Waterside Capital Corporation v. Paul Dietrich; Commonwealth of Virginia, Circuit Court for the City of Norfolk, Case # CL12 6115. (the "Eaton Court Asset Management Case")**

Eton Court was formed by the principal, Paul Dietrich, to acquire small and mid-sized asset management firms. The company started in Alexandria, Virginia, then moved to Connecticut, and has undergone several name changes (Eton Court, FoxHall Investments, Fairfax Capital). Waterside investments in Eaton Court started in 1999, in the form of preferred stock ($2.65 million), stock dividends and common stock warrants. Over the subsequent years, Waterside recovered a total of $1,539,512 from the investment. The accounting records of Waterside at the start of the receivership indicate a balance remaining of $74,701.

13

Exhibit 1

By September, 2012 the company was believed to be defunct. Waterside filed a complaint against the principal personally pursuant to guarantees he provided in 2006 and 2009. After various challenges, dismissal of counsel, and other actions by the defense, a Judgment was granted on October 18, 2013 in favor of Waterside in the amount of approximately $2 million including past due dividends, plus interest and attorney's fees. Settlement discussions continued into second quarter of 2014, to no avail. Mr. Dietrich is ostensibly without counsel at this time. Mr. Dietrich has been contacted by the Receiver's agent and settlement alternatives discussed. The Receiver has requested a personal financial statement to aid in assessing the settlements discussed, and is working with retained local counsel in the event mandatory disclosure through deposition and other legal steps become necessary.

2. **Waterside Capital Corporation v. Businessventures.com and Rick Rahim; Commonwealth of Virginia, Circuit Court for the City of Virginia Beach, Case # CL 13 2061). (the "Laser Nation" case).**

The balance for Waterside's investment in Laser Nation was charged off before the start of the receivership; however an action was filed against principal of the company providing a note (Rick Rahim) as collateral for the original loan. The amount of Waterside's claim was based on unpaid principal and interest of approximately $395,000. In addition, a Confession of Judgment in the amount of $100,000 was filed against a guarantor. The filing has been challenged.

Local counsel for the Receiver is in discussions with counsel representing Rahim. Defendant is willing to discuss settlement terms, but also contends that the note should not have been assigned and therefore unenforceable. The Receiver's counsel believes this argument is without merit. Counsel for Rahim also wants to discuss moving the case to Northern Virginia, the location of Rahim's Business Ventures.com business and Rahim's personal assets. Discussions on all aspects are ongoing.

14

Exhibit 1

3. **Waterside Capital Corporation v. Sonak Management, LLC and Edward G Gleason; Commonwealth of Virginia, Circuit Court for the City of Norfolk, Case # CL08007313. (the "International Wood" case).**

Waterside's initial investment in International Wood, Inc., which is defunct, was written off. At the start of the receivership Waterside held a Judgment against Edward Gleason, a guarantor of the International Wood loan, and Sonak Management, a company controlled by Gleason. The Judgment is in the amount of $579,953.14, with post-judgment interest continuing. The Judgment has been recorded in New York City (location of Sonak Management), Nassau County, New York (residence of Gleason) and in Texas, where Sonak was believed to own real property. Waterside determined pre-receivership that pursuit of these avenues of recovery would be costly and have limited upside potential. Waterside contacted a collection agency/law firm in New York to invite a contingency proposal, with no response.

Consistent with the recovery potential and expected costs of recovery on this asset, the Receiver is working with retained local counsel to locate and meet with Mr. Gleason, follow up with the collection firm, and confirm the status of all relevant filings and recordations.

## VI. RECEIPTS AND DISBURSEMENTS

The attached schedule (Exhibit A to the Receiver's Report) sets forth receipts and disbursements for the period from May 28, 2014 through May 31, 2015. At the end of the period of this report the Receiver held $230,139.71 in its account.

Receipts for this period were aided by monthly payments of interest received from one SBC (New Dominion Pictures, LLC) pending resolution of Waterside's total investment. As noted above, the Receiver's Motion for an Order Approving Buyout Agreement of Servient, Inc. was granted by the Court on August 25, 2015. The cash payment in the amount of $650,000 pursuant to the buyout agreement was received in September, 2015 is not reflected in Exhibit A.

15

Exhibit 1

This Receiver's Report was prepared by Charles P. Fulford, Principal Agent for the Receiver, with accounting information provided by PKF O'Connor Davies, LLP, accountants to the Receiver.

                                    Respectfully submitted,
                                    UNITED STATES SMALL BUSINESS ADMINISTRATION
                                    Receiver for Waterside Capital Corporation

Dated: OCT. 9, 2015    By: *[signature]*
                                      Charles P. Fulford
                                    Principal Agent for the Receiver

16

Exhibit 1

| | | | |
|---|---|---|---|
| SBA Receiver for Waterside Capital Corporation | Summary of Cash Receipts and Disbursements | May 28, 2014 - May 31, 2015 | EXHIBIT A |

1. Cash on Hand at the Beginning of Period: May 28, 2014 — $ 617,658.72

2. Receivership Operations

    A. Receipts from Receivership Operations:

    | | |
    |---|---:|
    | Americomm (Sale of Equity) | 4,000.00 |
    | New Dominion Pictures (Interest On Debt) | 117,048.27 |
    | Sale Of Office Equipment | 327.00 |
    | Interest on Receiver's Bank Account | 8.24 |
    | **Total Receipts from Receivership Operations** | **$ 121,383.51** |

    B. Disbursements from Receivership Operations:

    Operational Disbursements

    | | |
    |---|---:|
    | Agent Fees | 122,344.20 |
    | Accting/Bookeeping | 57,943.07 |
    | Rent/Overhead Allocation | 27,098.71 |
    | Legal Services | 14,079.85 |
    | IT/Systems Support | 8,417.18 |
    | Admin Services | 6,042.51 |
    | Travel Expenses | 4,807.33 |
    | Shareholder Services | 4,646.18 |
    | State Corp Comm - Annual Fees · Corpate Compliance | 2,019.00 |
    | Self Storage Rent -Storage/Move | 1,613.76 |
    | Bar Date Notice Publication | 1,504.80 |
    | Delivery & Messenger Services | 1,130.06 |
    | Copying Costs | 743.00 |
    | Payroll Services | 604.59 |
    | Bank Service Fees | 434.05 |
    | Postage | 410.56 |
    | Internet Services Expense | 236.39 |
    | Office Supplies | 127.40 |
    | **Sub-Total Operational Disbursements** | **$ 254,202.64** |

    Other Disbursements:

    | | |
    |---|---:|
    | Loan and Advance to Servient, Inc. | 250,000.00 |
    | Deposit On Office Space | 4,000.00 |
    | Computer Equipment | 700.00 |
    | **Sub-Total Other Disbursements** | **$ 254,700.00** |

    Total Disbursements from Receivership Operations: — $ 508,902.64

    Net Cash Gain/(Loss) from ReceivershipOperations — $ (387,519.13)

3. Cash on Hand at the End of Period: May 31, 2015 — $ 230,139.71